UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILEANA C.H., <br><br> Petitioner, <br><br> v. <br><br> TODD M. LYONS, et al., <br><br> Respondents. | No. 2:26-cv-00214-TLN-CSK <br><br><br> **ORDER** |

This matter is before the Court on Petitioner Ileana C.H.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) For the reasons set forth below, the Court GRANTS Petitioner's Petition.

///
///
///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

The instant action arises from Petitioner's allegedly unlawful detention. (*See* ECF No. 1.) Petitioner entered the United States in October 2022, after having been subjected to physical abuse and forced prostitution in her home country of Guatemala. (ECF No. 2-2 at 10.) Petitioner presented herself at the border and expressed fear of return. (*Id.*) After determining Petitioner was not a flight risk or danger to the community, the agents released her on her own recognizance pursuant to 8 U.S.C. § 1226(a), with a Notice to Appear ("NTA") charging her with removability under INA § 212(a)(7)(A)(i)(I). (*Id.*)

Petitioner settled in the Bakersfield, California area. (*Id.*) Prior to her arrest, she lived with her son and her partner and worked as an agricultural laborer until debilitating stomach pains forced her to leave her job. (*Id.*)

Petitioner filed a timely Form I-589 Application for Asylum, Withholding of Removal, and protection under the Convention Against Torture. (*Id.*)

Petitioner complied with all supervision terms, attendance at check-ins, and court dates. Petitioner also did not commit any crimes and she does not have any criminal convictions. (*Id.*)

On November 6, 2025, Petitioner voluntarily went to the U.S. Immigration and Customs Enforcement ("ICE") office in Bakersfield, California to let the officers know her phone had been disabled and to provide them with a new phone number where they could reach her for future check-ins. (*Id.*) ICE then arrested her and transferred her to the California City Corrections Center, where she was detained without due process of law. (*Id.*)

On January 26, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, challenging the lawfulness of her civil detention and seeking release. (ECF No. 1.) On January 26, 2026, the Court granted Petitioner's Motion for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why the Petition should not be granted. (ECF No. 5.) On January 30, 2026, Respondents filed a response to the order to show cause and motion to dismiss the Petition. (ECF No. 9.) Petitioner filed a reply. (ECF No. 10.) The Court therefore considers the Petition

---

[1] The following factual background is taken largely verbatim from Petitioner's brief in support of her motion for temporary restraining order. (ECF No. 2-2.)

on its merits.

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

In her Petition for Writ of Habeas Corpus, Petitioner claims she is being unlawfully subjected to mandatory detention in violation of due process.[2] (*See* ECF No. 1.) In response, Respondents contend Petitioner is an "applicant for admission" who is subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)"). (ECF No. 9 at 2–3.) The Court turns to a discussion of Petitioner's procedural due process claim.

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

///

---

[2] Petitioner also asserts a claim for a violation of her substantive due process rights. (ECF No. 1 at 11–12.) The Court finds it need not address Petitioner's additional claim to rule on the Petition, as this claim seeks the same relief Petitioner seeks in her procedural due process claim.

3

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.   Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court agrees with Petitioner that she has a liberty interest in her freedom from physical custody, as she gained a liberty interest after she was previously released. (ECF No. 2-2 at 10, 16.) Under *Morrisey*, this release implied a promise that she would not be re-detained, during the pendency of her immigration proceedings, if she abided by the terms of her release. As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in her continued freedom as she awaits

the outcome of her asylum proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

## B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, the Court finds Respondents violated Petitioner's due process rights.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  Petitioner asserts the degree of deprivation is high, as she has been completely deprived of her physical liberty and has ripped her from the "free[dom] to be with family and friends and to form the . . . enduring attachments of normal life." (ECF No. 2-2 at 16 (quoting *Morrisey*, 408 U.S. at 482).)  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by her detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Petitioner maintains Respondents arrested her and detained her with no notice and no opportunity to contest her detention before a neutral arbiter. (ECF No. 2-2 at 17); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")).  Thus, the Court finds Petitioner was likely erroneously deprived of her liberty interest.  Without any procedural safeguards to determine whether her

detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).

The cost and time of procedural safeguards are minimal here. Indeed, Petitioner notes that immigration courts routinely conduct custody hearings, which impose a "minimal" cost to the government. (ECF No. 2-2 at 18.) These are the very processes owed to Petitioner under 8 U.S.C. § 1226(a), which Petitioner contends applies to her. (ECF No. 2-2 at 10.) Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on her asylum application than to continue to detain her. *See also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Here — where Petitioner has substantially complied with the conditions of her release and there is no final order of removal — the Court

finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty. Further, Respondents have not provided any substantive opposition to the contrary. (*See* ECF No. 9.)

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents did not provide either. Moreover, Respondents did not provide a post-deprivation opportunity to be heard. The Court accordingly finds Respondents violated Petitioner's procedural due process rights.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (ECF No. 1) and DENIES Respondents' Motion to Dismiss (ECF No. 9).[3] Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: February 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Petitioner notes in her reply that she will submit an EAJA fee application after entry of final judgment. (ECF No. 10 at 6.) The Court will consider any timely-filed request for fees and costs on a properly noticed and supported motion.